UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,                ECF Case

          - against -                No. 19 Civ. 09052 (LAP)

JON BARRY THOMPSON,

                Defendant,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A COMPLETE STAY

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
      of America

Jordan Estes
Drew Skinner
Assistant United States Attorneys

    *- Of Counsel -*

# PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the parallel criminal case, *United States v. Jon Barry Thompson*, 19 Cr. 698 (ER) (the "Criminal Case"). Counsel for Thompson has informed the Government that their client consents to the Government's request for a full stay. The CFTC does not object to the request for a stay.

The Criminal Case arises from the identical set of facts and circumstances that underlie this action. As a result, a full stay is especially appropriate because any exchange of discovery would be asymmetrical and would merely allow the defendant to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a complete stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection. *See, e.g.*, *SEC v. Wey*, 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Durante et al.*, 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at **2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29, 2016); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3

(S.D.N.Y. Nov. 9, 2012) (granting U.S. Attorney's Office request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *Harris v. Nassau County et al.*, 2014 U.S. Dist. LEXIS 94554 at *10 (E.D.N.Y. 2014); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this action until the completion of the Criminal Case. Defendant Thompson and the Commodity Futures Trading Commission ("CFTC") do not oppose the Government's motion.

## FACTUAL BACKGROUND

This case and the parallel Criminal Case arise out of the same underlying events. On July 25, 2019, a criminal complaint (the "Criminal Complaint")[1] was unsealed, charging Thompson with two counts of commodities fraud and two counts of wire fraud. The charges related to two fraudulent schemes in which Thompson induced two victim companies to send millions of dollars to his companies, Volantis Escrow Platform LLC ("Volantis Escrow") and Volantis Market Making LLC ("Volantis Market Making") (collectively, "Volantis") in connection with the sale of Bitcoin. On September 25, 2019, an indictment (the "Indictment")[2] was returned, charging Thompson with the same counts, based on the same conduct alleged in the Criminal Complaint. On September 25, 2019, the CFTC filed a complaint against Thompson alleging violations of the commodities laws related to the same schemes (the "CFTC Complaint"). The

---

[1] The Criminal Complaint is attached as Exhibit 1.
[2] The Indictment is attached as Exhibit 2.

2

facts set forth below are detailed in the Criminal Complaint and the Indictment, and are similarly reflected in the CFTC Complaint.

As alleged in the Criminal Complaint, the Indictment and the CFTC Complaint, Thompson claimed in promotional materials for Volantis that Volantis "minimize[d] settlement default risk" in cryptocurrency transactions. Thompson claimed that because Volantis acted as a custodian of assets for "both sides of the transaction, there is no risk of default."

In June and July 2018, Thompson induced one victim company ("Company-1") to send Volantis over $3 million to fund the purchase of Bitcoin for Company-1. Thompson falsely assured Company-1 that Thompson had the Bitcoin in hand and that Company-1's money could not be lost. Even though Thompson had told Company-1 that before any transaction "cash is with me, coin is with me," Thompson sent over $3 million of Company-1's money to a third-party entity purportedly in exchange for Bitcoin without first receiving any of the Bitcoin in hand. After taking Company-1's money, Thompson lied for days about the status of the transaction and the location of Company-1's Bitcoin and money, which was never returned.

In July 2018, Thompson made false statements to another victim company ("Company-2") to induce Company-2 to send Volantis over $4 million to fund the purchase of Bitcoin for Company-2. After receiving Company-2's money, Thompson sent a substantial portion of the money to a third party without first receiving any Bitcoin in return. Thompson never provided Company-2 with any Bitcoin, nor did he return Company-2's money. After receiving Company-2's money, Thompson also lied to Company-2 about the location of the Bitcoin and the status of the transaction.

**ARGUMENT**

The Government's requests to intervene and for a complete stay of this civil action should be granted. If this case were to proceed, there would be a risk of significant interference with the Criminal Case. A complete stay would prejudice no party to this civil action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case. Importantly, none of the parties to this civil action opposes the Government's requests.

**I.     THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the Criminal Case and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions — especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992; *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used

4

to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest."). None of the parties to this action opposes the Government's motion to intervene.

## II.   A COMPLETE STAY OF THIS ACTION IS APPROPRIATE

### A.   Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests

> of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*See, e.g.*, *Tuzman*, No. 15 Civ. 7057 (AJN), at 2 (quoting *Louis Vuitton*, 676 F.3d at 99). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

   **B.   Discussion**

Application of each of these factors here weighs in favor of the stay sought by the Government.

   **1.   *The Extent of the Overlap***

That the criminal and civil cases involve essentially identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related

6

transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the Criminal Case and this case involve the same alleged fraudulent schemes perpetrated by Thompson. The cases involve virtually identical facts, witnesses and issues, and name the same defendant. As a result, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman,* 15 Civ. 7057 (AJN), at 3.

### 2. The Status of the Criminal Case

The return of an indictment in the Criminal Case is also a factor that weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Although a trial date has not yet been set, Thompson has been indicted, arrested, and is receiving Rule 16 discovery. The steady forward progress of the Criminal Case strongly favors a stay. *See Tuzman*,

No. 15 Civ. 7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

### 3. The Potential Prejudice to the Parties

A neither the CFTC nor the defendant oppose a full stay, there is no prejudice to any parties. Indeed, with respect to the defendant, granting a stay of the civil case to permit the Criminal Case to proceed to its conclusion would actually benefit Thompson, since granting a stay of the civil case would for now obviate forcing him to make the choice between being prejudiced in the civil case by the assertion of his Fifth Amendment rights or being prejudiced in the criminal case if he waived those rights.

### 4. The Interests of the Court

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding,

thereby streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5. The Public Interest

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery — restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively

> block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *Tuzman*, No. 15 Civ. 7057 (AJN) (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to

renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which Thompson would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the CFTC, while the CFTC would be unable to use any of these discovery mechanisms to obtain information from Thompson because of his assertion of his Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because Thompson will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's application.

## **CONCLUSION**

For these reasons, the Government respectfully requests that its application to intervene and for a complete stay of this matter be granted. A proposed stay order is attached as Exhibit 3.

Dated: New York, New York
November 18, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:   /s/ Jordan Estes
Jordan Estes
Drew Skinner
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2543/1587